[No. 18261.   Department One.—March 12, 1894.]

## IN THE MATTER OF THE ESTATE OF GUSTAVE EICHHOFF, DECEASED, GEORGE EICHHOFF, APPELLANT, MAGDALENA EICHHOFF, RESPONDENT.

JUDGMENT—JURISDICTION OF PERSON—ABSENCE OF PROOF—PRESUMPTION.
A domestic judgment of a superior court, both of the parties to which are residents within the state, must be presumed to have been rendered with jurisdiction over the person of the defendant, when the same is offered in evidence in another proceeding, although there is no proof of service of summons or appearance on the part of the defendant, and although the judgment is itself silent concerning the jurisdiction over the person of the defendant.

ID.—DETERMINATION OF JURISDICTION—PRESUMPTION OF EVIDENCE—SILENCE OF RECORD.—The jurisdiction does not exist by virtue of the mere decision of the court that it has jurisdiction, but the presumption of jurisdiction exists, because the court is authorized to determine the question of jurisdiction in the same mode as any other question of fact upon which its judgment is to rest, and its decision thereon is presumed to have been made upon evidence sufficient to sustain it; and this presumption does not depend upon the existence of any record of the decision, but the necessity for the presumption arises only when the record is silent.

ID.—JUDGMENT ANNULLING MARRIAGE—INSANITY OF WIFE—EVIDENCE.— A judgment annulling a marriage upon the ground of the fraud of the wife in concealing the fact that she was insane at the time of the marriage is competent evidence of the annulment of the marriage in favor of a widow of the deceased husband claiming under a subsequent marriage, upon her application for letters of administration upon his estate, although there are no recitals in the judgment or in any part of the record of any service of summons on the insane wife, nor any appearance in her behalf in the action in which the judgment was rendered.

ID.—VOID MARRIAGE—SECOND MARRIAGE BEFORE DECREE OF ANNULMENT.—A decree annulling a marriage is a judicial determination of the *status* of the parties, and does not render the marriage void, but simply declares that it had been void from the beginning, except so far as necessary to protect the civil rights acquired by others in reliance upon its apparent validity; and the fact that the judgment annulling the marriage was not entered until after a marriage of the plaintiff with another woman does not invalidate such marriage.

APPEAL from an order of the Superior Court of San Joaquin County granting an application for letters of administration.

The facts are stated in the opinion of the court.

*J. J. Paulsell*, and *Kile & Plummer*, for Appellant.

*Nicol & Orr*, and *James H. & J. E. Budd*, for Respondent.

HARRISON, J.—Upon the death of Gustave Eichhoff, Magdalena Eichhoff, claiming to be his widow, applied for letters of administration upon his estate. Her application was resisted by the appellant, a son of the deceased, who also made application that letters of administration be issued to himself. The court granted the application of Magdalena, and denied that of the appellant.

The deceased and Magdalena were married May 25, 1882, and from that time lived together as husband and wife until his death in February, 1893. In 1863 he had been married to Milceon Winike, and they had lived in Stockton as husband and wife until 1876, during which time the appellant and five other children were born to them. In 1876 the wife was committed to the insane asylum at Stockton, and she is still living as an inmate of said asylum. In April, 1882, the deceased brought an action against her in the superior court of Marin county to procure a decree annulling his marriage with her upon the ground of fraud on her part in concealing the fact that she was insane at the time of their marriage, and a decree to that effect was rendered by that court in July, 1882. Upon the present application for letters of administration the judgment-roll in that action was introduced in evidence, and it is claimed by respondent that, by virtue of this judgment, her marriage with the deceased constituted her his lawful wife, while the appellant maintains that it fails to show that the marriage between his mother and the deceased was ever annulled. The judgment-roll shows that the complaint was filed April 21, 1882; that on the same day a summons was issued thereon, and that it was returned April 25, 1882, without any proof of service; that on the 17th of July, 1882, after hearing evidence upon

the averments of the complaint, the court rendered its judgment "that the marriage between the plaintiff, Gustave Eichhoff, and the defendant, Milceon W. Eichhoff, be and the same is hereby, annulled, and said parties are, and each of them is, restored to the *status* and position of unmarried persons." There is also in the record an affidavit of the plaintiff, filed on the same day with the return of the summons, to the effect that the defendant was then confined in the insane asylum at Stockton, and asking for the appointment of a guardian *ad litem*, together with the order of the same date making such appointment; but as these documents do not form a part of the judgment-roll, they cannot be considered in determining the effect of the judgment. There is no recital in the judgment, or in any part of the record, of any service upon the defendant or appearance in her behalf, and the ground of the appellant's contention is, that as the evidence offered did not show affirmatively that the superior court had any jurisdiction over the defendant, the court was not authorized to determine therefrom that the marriage between her and the deceased had been annulled; while on the part of the respondent it is claimed that the record of the judgment and of its rendition raises the presumption that the court had acquired jurisdiction of the defendant in some form authorized by law before it entered upon the hearing of the cause and exercised its judicial power. The appellant herein made no offer to show that the defendant in the former action had not in fact been served with the summons, so that we are not called upon to determine whether it would be competent to show by extrinsic evidence that the court did not in fact have jurisdiction over the defendant or to contradict the presumption which arises when the record is silent upon that subject. The question sharply presented for determination is whether a domestic judgment, wherein both of the parties thereto are residents within the state and where there is no proof of service or appearance on the part of the defendant, and which is itself silent con-

cerning the jurisdiction over the defendant, raises any presumption in reference thereto, when the same is offered in evidence in another proceeding.

This question has not often arisen, and has not, we believe, been before presented in this state, although the principles applicable thereto have been often discussed in opinions upon cognate subjects, notably in *Carpentier* v. *Oakland*, 30 Cal. 439, and in *Hahn* v. *Kelly*, 34 Cal. 391, 94 Am. Dec. 742, two leading cases thereon; but in the former of these cases there had been an appearance on the part of the defendant, and it was sought to show that it was unauthorized, while in the latter case the judgment-roll itself contained a recital that service had been made upon the defendants, as was also the case in *Sharp* v. *Brunnings*, 35 Cal. 528, and in *Reeve* v. *Kennedy*, 43 Cal. 643; and in *Mahoney* v. *Middleton*, 41 Cal. 41, the judgment recited the appearance and answer of the defendants. In *Drake* v. *Duvenick*, 45 Cal. 455, there had been an attempted service upon the defendant, and it was contended that it was insufficient for the reason that a copy of the complaint had not been served with a copy of the summons, but it was held that by such personal service, though defective, the defendant had received such notice as gave the court sufficient jurisdiction over him to prevent its judgment from being void. The same principle was repeated in *Sacramento Savings Bank* v. *Spencer*, 53 Cal. 737.

More than two hundred years ago it was said in *Peacock* v. *Bell*, 1 Wm. Saund. 74, that "The rule for jurisdiction is that nothing shall be intended to be out of the jurisdiction of a superior court but that which specially appears to be so; and, on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged"; and this rule has been so frequently repeated as to have become a maxim in the law. This presumption extends to every thing necessary for the support of the judgment, as well those facts which are necessary to give the court jurisdiction of the defendant as those which

are necessary to sustain its decision of fact or conclusions of law thereon. Every court is called upon to determine in the first instance whether it has jurisdiction to hear the cause before it, and its decision upon this point is entitled to the same presumption of verity as its decision upon any other point. It is also its duty, before it hears the complaint of the plaintiff, to determine whether the defendant has been properly brought before it; but to assume that the court has determined this question without making any inquiry, or without any evidence before it, involves the presumption that it has neglected to perform its official duty, whereas a presumption that an official duty has been neglected is never indulged. The fact that the court has rendered a judgment implies a determination by it before it assumed to hear the controversy, that it had jurisdiction over the subject matter of the action, and of the defendant against whom the complaint was directed. Its jurisdiction does not exist by virtue of its mere decision that it has jurisdiction, as that would be reasoning in a circle, but the presumption of its jurisdiction exists because it has been authorized to determine this question in the same mode as any other question of fact upon which its judgment is to rest, and its decision thereon is presumed to have been made upon evidence sufficient to sustain it. Its determination upon this question is to be made upon evidence of some nature, and, whether this evidence is sufficient or insufficient to support its conclusion thereon, it has the jurisdiction to make the determination; and if its conclusion is incorrect, it is merely error, which can be reviewed only upon a direct appeal. Even though it should determine the question without any evidence before it, the same presumption of verity attends its decision upon this point as upon any other issue which it may determine without evidence. Nor does this presumption of its jurisdiction to make the decision depend upon the existence of any record of the decision. The existence of the jurisdiction antedates its exercise, and does not depend upon any subsequent

record thereof. The facts must be brought to its notice before the decision is made, and the decision must be made before there can be any record of its action. If it makes a record of the facts giving it jurisdiction, or of its exercise of such jurisdiction, there is no occasion to invoke any presumption. It is only when the record is silent that the necessity for presumption arises. (Freeman on Judgments, sec. 124; Black on Judgments, sec. 271; *Brittain* v. *Kinnaird*, 1 Brod. & B. 432; *Foot* v. *Stevens*, 17 Wend. 483; *Hart* v. *Seixas*, 21 Wend. 40; *Huntington* v. *Charlotte*, 15 Vt. 46; *Boker* v. *Chapline*, 12 Iowa, 204; *Pope* v. *Harrison*, 16 Lea, 82; *Benefield* v. *Albert*, 132 Ill. 671; *Horner* v. *Doe*, 1 Ind. 130; 48 Am. Dec. 355; *Sims* v. *Gay*, 109 Ind. 501; *McClanahan* v. *West*, 100 Me. 320.)

The judgment-roll in the present case is consistent with the fact that proper service was made upon the defendant before the hearing upon the complaint, and, as any condition of facts consistent with the validity of the judgment will be presumed to have existed, rather than one which will defeat the judgment, it must be presumed in support of the action of the court, that such service was shown to it, although it has not preserved any record thereof. This presumption was sufficient to sustain the finding of the court in the matter appealed from herein, that the respondent was the wife of the deceased at the time of his death.

The fact that the judgment annulling the marriage between the deceased and his wife was not entered until July did not invalidate his marriage with the respondent in the previous May. The decree annulling the marriage was a judicial determination of the *status* of the parties thereto. It did not render the marriage void, but simply declared that it had been void, and the marriage thereby annulled is to be regarded as never having, in fact, existed, except in so far as was necessary to protect the civil rights that others may have acquired in reliance upon its apparent validity. (Stewart on

Marriage and Divorce, sec. 141; 2 Bishop on Marriage, Divorce, and Separation, sec. 1596, et seq.; *Perry* v. *Perry,* 2 Paige, 501.)

The order is affirmed.

PATERSON, J., and GAROUTTE, J., concurred.

Hearing in Bank denied.